# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

NORFOLK MEDICAL PRODUCTS, INC., )
                                                    )

Plaintiff,                                   )

V.                                           )  Case No. 15 CV 00215

                                                    )  Jury Demand

Angiodynamics, Inc.,                          )

                                                    )

Defendant.                                    )

## COMPLAINT AND JURY DEMAND

Plaintiff Norfolk Medical Products, Inc. ("Norfolk") hereby alleges the following for its complaint against Defendant Angiodynamics, Inc. ("Angiodynamics"):

### THE PARTIES

1.      Plaintiff Norfolk is an Illinois corporation having its principal place of business at 7350 N. Ridgeway Avenue, Skokie, Illinois 60076.

2.      On information and belief, AngioDynamics is a Delaware corporation having its principal place of business at 14 Plaza Drive, Latham, New York 12110.

### JURISDICTION AND VENUE

3.      This is a civil action for tortious interference with contract, unfair competition, and false representations arising under the laws of the United States and under the state laws and common laws of the State of Illinois.

4.      This court has personal jurisdiction over Defendant because, upon information and belief, Defendant has knowingly and purposefully transacted business in Illinois by selling, offering to sell, and/or distributing products, promotional materials, and advertisements to residents of Illinois. In addition, the parties are citizens of different states and the amount in

controversy exceeds $75,000, exclusive of interest and costs, and jurisdiction is, therefore,

proper pursuant to 28 U.S.C. § 1332(a), (b), and (c). The Defendant's false and misleading

statements and actions have caused the Plaintiff potential loss of sales in excess of $100,000.

## FACTUAL BACKGROUND

5.      Plaintiff Norfolk is a manufacturer of medical devices in both the human medical

device field and the animal research medical device field.  Norfolk has been innovative in the

human medical device field, specifically in the development of novel vascular access ports, since

its inception in 1981.

6.      Vascular access ports are medical devices used to infuse a patient with drugs,

nutrients and liquids. While vascular access ports are used primarily for the infusion of drugs and

liquids, such as delivering chemotherapy drug therapy, there are other uses not as common. One

such use is the use of vascular access ports in the field of apheresis.  Apeheresis involves the

removal of blood from patients.

7.      On information and belief, only one vascular access port is currently used for

apheresis, the Defendant's Vortex ™ product line.

8.      In 2010, Plaintiff Norfolk designed a new vascular access port, the SportPort$^{TM}$

product line to be a superior product to the Defendant's Vortex ™ product line and capable of

competing with the Vortex ™ product line in the field of apheresis.

9.      Plaintiff Norfolk introduced the SportPort$^{TM}$ product into the vascular access port

market at the SIR Show in March, 2011.

10.     The SportPort$^{TM}$ product line is owned solely by Plaintiff Norfolk. Norfolk at no

point has assigned or licensed any right, title or interest in the SportPort$^{TM}$ product.

11. The SportPort™ product features a substantially spherical reservoir that provides for superior flushing capabilities thereby preventing the accumulation of sludge or debris in the reservoir. Such prevention of sludge or debris allows for decreased chance of infection in the reservoir and in the patient.

12. Plaintiff Norfolk entered into agreements with various health and medical facilities to test the efficacy of the SportPort™ product line compared to other products currently on the market. Specifically, the facility UT Southwestern Medical Center, agreed to conduct a study to test the fluid dynamics and overall effectiveness against other products currently on the market. On April 25th, a bench test was performed and the SportPort was shown to be greater than 30% more effective than such competing products.

13. The purpose of the study at UT Southwestern Medical Center was to prove the effectiveness of the SportPort™ product in the apheresis field.

14. On information and belief, on or about August 28, 2014, Blake McMillan, a representative from Angiodynamics made the false statement that Angiodynamics owns the SportPort™ product line.

15. On information and belief, on or about July 2014, a representative from Angiodynamics made the false statement that Norfolk would no longer be offering the SportPort™ product line.

16. On information and belief, on or about February 2014, Natalie Williams, a representative of Angiodynamics, made the false statement that Norfolk ports were made to be placed in animals for use in the veterinary market and to halt the evaluation.

17.     As a result of the false statements made by Angiodynamics, the health facility UT Southwestern Medical Center terminated the study conducted testing the efficacy of the SportPort™ product.

18.     The termination of the study resulted in the potential loss of sales of the SportPort™ product due to the impact the results of the study would have had on the marketability of the SportPort™ product.

19.     The termination of the study further caused the loss of sales to the apheresis unit at the UT Southwestern Medical Center which on information and belief currently only uses the Defendant's Vortex ™ product line.

**COUNT I**
**TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE BUSINESS RELATIONSHIP**.

20.     Norfolk incorporates by reference paragraphs 1 through 19, inclusive, as if fully set forth herein.

21.     Norfolk had a relationship with the health facility UT Southwestern Medical Center and had a reasonable expectation of entering into a valid business relationship that would have resulted in an economic benefit to Norfolk.

22.     Defendant was aware of Norfolk's relationship with the health facility UT Southwestern Medical Center and the study conducted being conducted for the efficacy of the SportPort™ product.

23.     Defendant intentionally and unjustifiably interfered with Norfolk's relationship with the health facility UT Southwestern Medical Center with the intent of preventing Norfolk's legitimate expectancy from such relationship ripening into a valid business relationship.

24.     As a result of Defendant's acts above, Norfolk has incurred damages in an amount to be proven at trial.

## COUNT II
## COMMON LAW UNFAIR COMPETITION

25.     Norfolk incorporates by reference paragraphs 1 through 19, inclusive, as if fully set forth herein.

26.     On information and belief, Defendant has engaged in and continues to engage in unfair competition by falsely alleging that the Defendant has ownership rights in the SportPort™ product line with the intention of interfering with and trading on the business reputation and goodwill engendered by Norfolk through hard work and diligent effort.

27.     Defendant's acts alleged above have caused, and if not enjoined will continue to cause irreparable and continuing harm to Norfolk's marks, business, reputation, and goodwill. Norfolk has no adequate remedy at law as monetary damages are inadequate to compensate Norfolk for the injuries caused by Defendant.

28.     As a result of Defendant's acts above, Norfolk has incurred damages in an amount to be proven at trial.

## COUNT III
## FEDERAL UNFAIR COMPETITION AND
## FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

29.     Norfolk incorporates by reference paragraphs 1 through 19, inclusive, as if fully set forth herein.

30.     On information and belief, Defendant has engaged in and continues to engage in unfair competition by falsely alleging that the Defendant has ownership rights in the SportPort™ product line with the intention of interfering with and trading on the business reputation and goodwill engendered by Norfolk through hard work and diligent effort.

31.     Consumers are likely to be misled and deceived by Defendant's representations regarding Defendant's false claims to the SportPort™ product line.

32.     Defendant knew or should have known that Defendant's statements were false or likely to mislead.

33.     Defendant's acts alleged above have caused, and if not enjoined will continue to cause irreparable and continuing harm to Norfolk's marks, business, reputation, and goodwill. Norfolk has no adequate remedy at law as monetary damages are inadequate to compensate Norfolk for the injuries caused by Defendant.

34.     As a result of Defendant's acts above, Norfolk has incurred damages in an amount to be proven at trial.

35.     On information and belief, Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT IV**
**VIOLATION OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT, 815 ILCS §§ 510, et seq.**

36.     Norfolk incorporates by reference paragraphs 1 through 19, and 28-34 inclusive, as if fully set forth herein.

37.     By the acts described herein, Defendant has engaged in unlawful and unfair business practices that have injured and will continue to injure Norfolk in its business and property, in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510, et seq.

38.     Defendant's acts alleged above have caused, and if not enjoined will continue to cause irreparable and continuing harm to Norfolk's marks, business, reputation, and goodwill. Norfolk has no adequate remedy at law as monetary damages are inadequate to compensate Norfolk for the injuries caused by Defendant.

39.     Defendant's conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, entitling Plaintiff to recover reasonable attorneys' fees pursuant to 815 ILCS 510/3.

40.     As a result of Defendant's acts above, Norfolk has incurred damages in an amount to be proven at trial.

WHEREFORE, Plaintiff Norfolk Medical Products, Inc., prays for relief as follows:

A. An injunction against Angiodynamics, Inc. enjoining it from engaging in the unfair competition and deceptive practices as described in Counts II, III and IV.

B. Judgment against Angiodynamics, Inc. in an amount to be proven at trial;

C. Pursuant to 15 U.S.C. § 1117 and 815 ILCS 510/3, judgment against Angiodynamics, Inc. for the reasonable attorneys' fees incurred by Norfolk Medical Products, Inc. with respect to this action;

D. Judgment against Angiodynamics, Inc. for both pre-judgment and post-judgment interest;

E. Judgment against Angiodynamics, Inc. for Norfolk Medical Products, Inc.'s costs; and

F. Such other further relief as this court deems just and appropriate under the circumstances.

## JURY DEMAND
### (ALL CLAIMS)

Norfolk Medical Products, Inc. demands trial by jury on all the claims for damages.


Dated:  January 9, 2015               Respectfully submitted,

                                   NORFOLK MEDICAL PRODUCTS, INC.


                            By:   /s/  Michael P. Tomlinson
                                 One of his attorneys

Michael P. Tomlinson
Tomlinson Law Office, P.C.
8501 W. Higgins Road, Suite 420
Chicago, IL  60631
Phone:  (312) 715-8770
Fax:  (866) 625-7089